## PATHÉ EXCHANGE, Inc., v. MILLER.

(Court of Appeals of District of Columbia. Submitted January 6, 1922. Decided February 6, 1922.)

### No. 3606.

1. **Evidence** ⊙→155(1)—**Defendant offering oral evidence as to terms of written contract cannot object to similar evidence for plaintiff.**

   Where defendant, who offered a written contract in evidence, did not rely upon it as establishing the terms of the agreement, but introduced oral evidence as to such terms, thereby treating the instrument merely as evidence tending to prove the actual terms, he could not object to oral evidence by plaintiff in rebuttal on that issue.

2. **Contracts** ⊙→323(1)—**Evidence held not to show conclusively cause of failure to furnish film was beyond control of lessor.**

   In an action for breach of a contract to furnish a film for exhibition, which provided that the distributor should not be liable for failure to furnish the film due to any cause beyond its control, evidence as to the agreement between the distributor and a prior exhibitor, to the effect that the prior exhibitor had an option to restrain the film three days before the time for delivery to plaintiff, *held* not to conclusively show that the failure to procure that film was due to a cause beyond the distributor's control.

3. **Contracts** ⊙→322(3)—**Destruction of film the week before scheduled exhibition held not to excuse failure to deliver.**

   The failure to deliver a designated film to an exhibitor on a specified date is not shown to be due to a cause beyond the distributor's control by evidence that one of the distributor's films was destroyed almost a week before it was to be delivered to the exhibitor, where there was no evidence that the distributor exercised due diligence to procure another film, but, instead, the evidence showed that distributor took no steps to that end until the day before the film was to be delivered.

   Smyth, Chief Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Action by Philip Miller against the Pathé Exchange, Inc. Judgment for the plaintiff, and defendant appeals. Affirmed.

E. C. Brandenberg, of Washington, D. C., for appellant.

H. Winship Wheatley, of Washington, D. C., for appellee.

ROBB, Associate Justice. Appeal from a judgment in the Supreme Court of the District for the plaintiff, appellee here, in an action for damages for breach of contract.

On December 19, 1918, the plaintiff, the proprietor of a moving picture theater in Annapolis, Md., entered into a contract with the defendant corporation, appellant here, for the privilege of exhibiting in his theater, on January 1st following, the picture known as "Infatuation." Among the conditions of the contract were the following (paragraph 12):

"That the distributor (defendant) shall not be liable for any loss or damage resulting to the exhibitor (plaintiff) by reason of failure or delay in delivering the films or advertising matter herein referred to, when such failure or delay

⊙→For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*o*

is due to any * * * failure of films or advertising matter in the custody or control of any other party to be delivered or returned to the distributor in time for delivery hereunder or to be re-forwarded as per distributor's instructions, or to strikes, lockouts, fire, floods, or to any other cause or causes what-soever beyond the control of the distributor."

In reliance upon this contract plaintiff advertised the picture quite extensively. On the 31st of December he was informed by the defendant that the film would be shipped to him in time for exhibition the day following, "and not to worry about it as it would be all right." At about 8 o'clock on the evening of the 31st he was informed that the defendant could not send him the film. Another film was tendered him but not accepted because it was not of a character that would "take" in Annapolis. This, and evidence on the question of damages, was substantially plaintiff's case.

The defendant moved for a directed verdict, but, when its motion was overruled, elected to introduce evidence in its own behalf.

The first witness for the defendant, "a booker," testified in substance that on the 17th of December, 1918, a Mr. Price of the Blue Mouse Theater in Baltimore, Md., leased "one of the films of 'Infatuation' for the 29th, 30th and 31st day of December"; that Mr. Price had negotiated with the Baltimore agent for the privilege of a three days extension for an additional $50; that Mr. Champion, the manager of the Washington branch of the defendant company, "declined to consent to this extension at the rate stated," and that this provision therefore was not inserted in the contract; that the dates were furnished by Mr. Price and were inserted in the contract before he signed it. The witness further testified that Mr. Price "sometimes leased pictures for three days only, and sometimes for three days with a privilege of renewal, or for six days with a privilege of surrendering in three days." Contracts between the defendant company and Mr. Price tending to substantiate this statement thereupon were introduced in evidence. The witness further stated, "The other of the two films in the control of the defendant company for this territory was being exhibited during Christmas week at the Rialto Theater in Washington," and that on the 26th of December this film became so damaged that it was necessary to return it to the factory in New York for reconstruction. On cross-examination the witness admitted that the Rialto Theater film had not been censored and that its exhibition in Maryland, therefore, would have been in violation of law.

The next witness for defendant was its Baltimore representative, who testified that, although he knew moving pictures could not be lawfully exhibited in Baltimore on Sundays, he did not look at the calendar when negotiating with Mr. Price, because Mr. Price furnished the dates; "that on the 31st of December, 1918, he called on Mr. Price about the picture 'Infatuation,' and Mr. Price told him he had an agreement with Mr. Champion for an option of another three days, and there was no way, he claimed, to get that picture away from him, because he had that option on it."

Mr. Champion, the next witness for defendant, stated that when Mr. Price came to Washington on the 17th he brought with him a con-

tract in triplicate for December 29th, 30th, and 31st, with the privilege of three days renewal for $50; "that witness discussed the matter with the said Price and told him that he would not give the privilege of extension for any such price." Thereupon, according to the witness, the proposed contract was destroyed and a new one prepared for the 29th, 30th, and 31st. The witness further testified that the Rialto Theater film "was destroyed on Thursday of Christmas week, making the print absolutely worthless for exhibition purposes." On cross-examination Mr. Champion stated that Mr. Price had paid $75 for the three days he retained the picture. When his attention was invited to a provision in the contract under which he might have collected $70 for each day the film was withheld, he stated that he had "made the best settlement possible." Witness further testified that he did not know, until subsequent to January 1, 1919, when his company was fined in Maryland, that uncensored films could not be exhibited legally in that state.

Thereupon the plaintiff, in rebuttal, offered the deposition of Mr. Price, who stated:

That he would not like to say that the dates were in the contract when he signed it: "that he thinks he signed a blank form; * * * that he booked the film for the week beginning December 30th and made the arrangement with both the manager and the booker: he bought the picture for the 30th, 31st, and 1st, with the privilege of an additional three days; that he does not know how the date December 29th appeared in the contract and had no understanding about that date as it was Sunday; that he never bought a thing on Sunday in his life; * * * that he had no understanding for December 29th, which was Sunday, and did not know it appeared on the contract; if he had, he would have shown a mistake was made; that after signing the contract he had no talk with anybody representing the defendant with respect to the dates until the second day he was playing it when he received a phone call from Washington from the Pathé Exchange, late in the afternoon; he informed witness the picture was to be played in Annapolis and he (witness) was to turn it over to Mr. Miller at that point; witness replied he had the picture only two days and the contract called for three with a privilege of six. * * * *"

All this testimony was admitted without objection. On cross-examination witness stated:

That he had some discussion with the Washington representatives of the defendant company "with reference to the payment of $50 for three additional days, and as he thought he saw money-making possibilities in the film to warrant his keeping it an additional three days and asked that if he elected to run it for an additional three days what the cost would be, and the price of $75 was made upon it and not $50; * * * that he does not recall any discussion with Mr. Champion subsequent to the exhibition over the question of the amount to be paid for the additional days, nor was there any compromise over the charge for the additional three days made some weeks after the exhibition."

On redirect examination the witness again stated:

"That there was a bargain made with respect to the price for the three additional days which the defendant was willing to rent the picture to him for, and that I am sure was $75."

The sole question discussed in appellant's brief is based upon the refusal of the court to direct a verdict for the defendant at the close

of all the evidence. It is conceded by counsel for appellant that unless the failure of the defendant to fulfill its contract resulted from causes beyond its control, paragraph 12 of the contract, from which we have quoted, is inapplicable.

[1] Both parties, without objection, introduced evidence as to the terms of the collateral contract between Price and the defendant, and our only concern, therefore, is whether that evidence presented any question of fact for the jury. The defendant having deemed it necessary to introduce evidence in support of the terms of the written contract with Price, that is, having treated that instrument merely as evidence tending to prove the actual terms of the contract, could not and did not object to plaintiff's evidence on that issue. It follows, therefore, that no question as to the reformation of the Price contract was involved; the issue being whether plaintiff's or defendant's evidence as to the actual terms of the contract would be accepted.

[2, 3] Mr. Price stated that the contract he made was for the 30th and 31st of December, 1918, and the 1st of January, 1919, with a privilege of three additional days. His testimony on the question of extension is clear, positive, and consistent, and supported, to some extent at least, by the fact that the amount he named as the consideration for that privilege is the amount actually paid. If the jury, then, accepted his testimony on this point, as it had a right to do, the necessary result was that when this contract was entered into defendant knew it could not rely upon the film leased to Mr. Price, regardless of whether the collateral contract with Mr. Price commenced on December 30th, as contended by him, or on December 29th, as contended by defendant. The only other film that could have been available to the defendant "for this territory," according to the record, was under contract "at the Rialto Theater in Washington" for Christmas week, and that film was rendered "absolutely worthless for exhibition purposes" on the 26th of December and had to be sent to the factory in New York. This was almost a week previous to the date in plaintiff's contract, so that, in the absence of evidence that defendant, in the exercise of reasonable diligence, could not have obtained another film, the accident to the Rialto Theater film constituted no defense to this action. That reasonable diligence was not exercised appears from the testimony of one of defendant's local agents, who stated that on December 31st he "phoned to the Philadelphia and Pittsburgh branches in an effort to get said film."

Since there was a question of fact for the jury, the judgment must be affirmed, with costs.

Affirmed.

SMYTH, Chief Justice (dissenting). There is but one question in this case, and that is as to whether or not the written contract between the appellant and Price is binding on the latter. If it is, Price was obligated to return the film on the night of the 31st of December, and this would have been in time for its delivery to Miller before his theater opened, January 1. Miller agreed that the appellant should "not be liable for any loss or damage" resulting "to him * * * by rea-

son of failure or delay in delivering the" film "in the custody or control of any other party," etc. The film was in the control of Price. He by his contract (section 2) was required to deliver it to the office of the appellant on the last day of the last exhibition of it, which in this case was, according to the contract, December 31. He failed to make the delivery, and, consequently, the appellant was not able to keep its contract with Miller.

Miller cannot hold the appellant unless the record shows he produced some substantial evidence that Price was not bound by his contract to return the film December 31. Price was bound, according to the face of the contract, and could escape only by establishing that he had a ground for reformation of the contract. To secure reformation it would be necessary for him to show either a mutual mistake or a mistake on his side and fraud or inequitable conduct on the part of the appellant. And this he would have to do by evidence "sufficiently cogent to thoroughly satisfy the mind of the court." Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 435, 12 Sup. Ct. 239, 245 (35 L. Ed. 1063). Reformation is never given except where both parties understood the contract as the bill alleges it ought to have been and as in fact it was except for the mistake. 23 R. C. L. 327; Green v. Stone, 54 N. J. Eq. 387, 34 Atl. 1099 55 Am. St. Rep. 577. There is not even a suggestion that the appellant was guilty of fraud or inequitable conduct. If, therefore, reformation could be granted, it would have to be upon the theory of mutual mistake.

The testimony of appellant's witnesses who participated in the making of the contract is clear and positive to the effect that the dates, December 29, 30 and 31, were given by Mr. Price to the person who drew the contract; that the appellant never fixes the dates, "as it is always the duty of the exhibitor to state the dates on which he desires to exhibit a picture"; that the contract was executed in triplicate; that at the time of its execution the dates were in it; that Mr. Price signed it, and that a copy was sent to him the next day, which would be the 18th of December. Price does not deny this. All he says upon the point is, to quote the record, that he does not "recall whether he signed the contract after those dates were inserted or not, but will not say that he did not; that he would not say that the exhibitor's contract [the one in question] was mailed to him prior to the exhibition, and that he received it, nor would he say that it was not." Unless this makes out a case for reformation, then the contract as written and signed is binding. I respectfully submit that it is utterly insufficient. Therefore there is no basis in the testimony for the verdict of the jury that the written contract between the appellant and Price was not binding and did not protect the appellant under the contract which it had with Miller.

Much testimony is set forth in the opinion of the court concerning the contract which Price thought he had with the appellant. It nearly all relates to negotiations which preceded the execution of the written contract, and, according to well-settled principles, is merged in that contract, unless it discloses mutual mistake, fraud, or inequitable conduct, which it does not.

There is no question of negligence here. Appellant had no knowledge that Price would not keep his contract, until the 31st, and it then did everything it could to procure for Miller another film. But it was not required to do anything. It was justified in standing on its contract with Miller that it would not be liable for the default of any person to deliver the film according to his contract.

The court makes a new contract for appellant and subjects it to a liability which it expressly and definitely contracted against. I dissent.